THOMAS *vs.* AUSTIN and others.

Papers executed at the same time, and relating to the same subject matter, should be construed together.   Upon this principle a receipt, for a payment upon a contract, may be contradicted by other papers executed simultaneously with the contract and receipt, and forming a part of the same transaction.

Evidence not within any issue framed by the parties, must be disregarded on the hearing, though it may have been received without objection.   And a decree founded on evidence of that character will be reversed.

The rule is explicit and absolute, that a party must recover in chancery according to the case made in his bill, or not at all—*secundum allegata*, as well as *probata*.

Where a party, in pleading, has alleged a fact which is not denied by his adversary, such fact must be taken as true, and cannot be contradicted in that suit.

Nor does it alter the case that such fact is alleged in the charging and not in the stating part of a bill of complaint.

IN EQUITY.   This was an appeal, by the defendants, from a decree of the late vice chancellor of the fourth circuit.   On the 26th of November, 1840, articles of agreement were entered into between the defendant, John Austin, and one Pasco Whitford, (who has since deceased, leaving the other defendants as his representatives,) of the first part, and one Jerome Woodbury of the second part, under their respective hands and seals, by which the said first party agreed to sell and convey by deed in fee to the said Jerome, and the latter to purchase, a certain piece of land of about eleven acres, situate in Edwards, in the county of St. Lawrence, and the mills and mill privileges thereon, for the consideration of $1620 to be paid as follows—$500 with interest on the 26th Nov. 1841, $500 with interest on the 26th Nov. 1842, $206,66 with interest on the 26th Nov. 1843, $206,66 with interest on the 26th Nov. 1844, and $206 with interest on the 26th Nov. 1845.   The counterpart of this agreement, set up and admitted in the answer, differed only from that in the bill, by the sum of 66 cents in the last payment, which was probably omitted by mistake in the agreement given to Woodbury.   Woodbury, with the approbation of the other parties, took the immediate possession of the premises.

Thomas v. Austin.

On the day of making the above contract, Woodbury paid to Austin and Whitford $1079, to apply upon and in part satisfaction of such contract, and a receipt for the same was endorsed upon the contract, and subscribed by Austin and Whitford respectively. The bill stated that on the 17th of May, 1842, Woodbury assigned and transferred to the complainant all his right and title to the said contract, by an instrument in writing subscribed by him, and the complainant thereupon took possession of the same premises, with the knowledge of the defendant Austin, and had hitherto continued in possession.

It was admitted by the pleadings that Pasco Whitford died intestate, on January 7th, 1842, leaving a widow and divers children and grandchildren his heirs at law, him surviving, all of whom were parties defendants. That the defendants, John Austin and Benoni Whitford, one of said heirs, were appointed the administrators of the said Pasco Whitford deceased. Since the complainant became the owner of the contract, he had paid to the defendant Austin, to apply on it, and which had been endorsed on the counterpart of the said agreement in the complainant's hands, and subscribed by the defendant Austin, the following sums, to wit : on the 2d Jan. 1843, the sum of $75,92, on the 25th Nov. 1843, the sum of $161, on the 26th Nov. 1844, the sum of $235,18, which was accepted and received by the said Austin, and on the 26th Nov. 1845, he tendered to the said John Austin the further sum of $220,42, which the complainant alleged was all that remained due, and demanded a deed. The defendant refused to accept it, or to give a deed. The complainant averred that all the moneys due on the contract had been paid, satisfied and discharged, and that all the covenants and conditions on the part of Woodbury to be performed had been fully performed and kept, and that nothing was now due or to become due thereon. The bill set out various pretences of the defendants, among which it was alleged that the defendants pretended that $1000, being part of the large endorsement on the contract, was received in a farm, which was at the time of taking it subject to an incumbrance which Woodbury was to pay off, and that unless that was paid off by him, the farm

was not to apply as a payment on the contract; whereas in truth the farm was received at and for the sum of $1000, and to apply on the contract absolutely.

The bill called for a specific performance of the agreement, and waived an answer under oath. The material facts in the case were substantially admitted. The main point litigated was as to the payment of $1079 endorsed on the contract the day it was entered into. The defendants admitted that an endorsement to that amount was made upon the contract, as stated by the bill; but they denied that it was so endorsed as an absolute payment, but insisted that its application to the contract depended upon the performance by Woodbury of certain covenants and agreements to be performed by him. They stated that on the 2d March, 1840, Woodbury purchased a farm of John Lafarge, situate in Jefferson county, containing $107\frac{79}{100}$ acres, and gave back to him a mortgage for a part of the consideration money, being $625, payable in five years thereafter, with interest; that this mortgage being unpaid and a lien upon the said Jefferson county farm, Woodbury and his wife, on the said 26th Nov. 1840, for the consideration expressed of $1620, conveyed the farm by warranty deed to the defendants, John Austin and Pasco Whitford, in the lifetime of the latter, in fee simple. That Woodbury at the same time entered into a covenant with Austin and Whitford to pay off and discharge the said mortgage; that Woodbury requested the defendants, Austin and Whitford, to endorse on the contract in question $1079, being $1000 of the consideration money agreed upon for the farm, and $79, the price of certain other property sold by Woodbury to Austin and Whitford, and agreed that if they would make such endorsement on said contract, the receipt should not be deemed evidence of payment of $1000 on the contract, unless Woodbury should fully pay off and discharge the La Farge mortgage. And the answer averred that the endorsement of $1079 was made upon the contract under the express agreement with Woodbury that unless he paid off the La Farge mortgage, the said receipt should be deemed null and void. The answer admitted that the complainant, in the spring of

Thomas *v.* Austin.

1842, took an assignment from Woodbury of his interest in the contract and went into possession, and has since continued in possession, but without the assent or approbation of the defendants, and alleged that Woodbury was insolvent when he so assigned, and had been ever since; that the complainant knew of his insolvency at the time he took the assignment, and was informed of the La Farge mortgage, and of all the matters above alleged, and insisted that he was bound by the above agreement of Woodbury. The answer admitted the other payments, as stated in the bill, and the tender on the 26th Nov. 1845, of the sum of $220,42, and the refusal of the defendant to take it as a full payment, but avowed his willingness to take it and apply it on the contract; that the defendant had before notified the complainant that the $1000 endorsement was null and void, and that this sum had now in part been paid on the contract. The answer then denied that all the payments on the contract had been made; alleged that the La Farge mortgage was not paid by Woodbury, and had been foreclosed at law, and that the premises were sold about the 18th Sept. 1843, and bid in by La Farge for $775. The answer insisted that the defendants were not bound to convey the premises to the complainant; denied that the sum of $1000 was paid to the defendants by Woodbury, and denied all combination, &c. The infant defendants put in a general answer, submitting their rights to the protection of the court. Replications were filed and proofs taken. The vice chancellor made a decree directing a specific performance of the agreement by the defendants, with costs; and directing them, on the payment of the sum due on the day the tender was made, to execute to the complainant a deed of the premises, in fee, with covenants against their own acts; the amount due at that time, to be ascertained, and the form of the deed to be settled and approved of by a master.

*J. A. Spencer & C. G. Myers,* for the appellants.

*C. P. Kirkland,* for the respondent.

Thomas *v.* Austin.

*By the Court,* GRIDLEY, J.    This is an appeal from a decree of the late vice chancellor of the fourth circuit, directing the specific performance of a contract to convey certain lands situated in the town of Edwards, in the county of St. Lawrence. The bill was filed by Thomas, as assignee of one Jerome Woodbury, setting out a contract, bearing date on the 26th of November, 1840, by which the defendant Austin, and one Pasco Whitford, (who has since died, leaving the other defendants his representatives,) contracted to sell and convey the premises in controversy, on the payment of the purchase price of $1620, in the manner stated in the agreement.    The bill then set forth the payment, at the date of the contract, of $1079, and the endorsement of the receipt of that sum on the contract.    This averment is followed by a statement of the payment of the further sum of $75 on the 2d' of January, 1843, of $161 on the 25th of November of the same year, of $235,18 on the 26th of November, 1844, and of the tender of $220,42 on the 26th of November, 1845, accompanied with the demand of a deed, and a refusal by Austin, the surviving vendor, either to accept the tender or to convey the land.

The stating part of the bill is followed by a statement of various pretences set up by the defendants, with the charges of the complainant thereon, among which is the following, relating to the payment of $1000 parcel of the endorsement of $1079 : "And at other times the several persons aforesaid and their confederates, pretend that the said one thousand dollars was received in a farm, which was at the time of the taking of the same, subject to an incumbrance, which the said Woodbury was bound and did agree to pay off and discharge.    And that unless paid and discharged, the said sum was not to apply as a payment on the said contract; whereas, in truth and in fact, the said farm was received at and for the sum of one thousand dollars, and to apply on the said contract at that sum, and that such application was absolute and unconditional; and that the said Austin and Whitford took the covenant of the said Woodbury, to pay off and discharge any incumbrance there might be on the said farm."

Thomas *v.* Austin.

From this brief statement of the contents of the bill, it appears that the ground of relief assumed by the complainant, was the payment of the entire purchase price of the premises described in the contract ; and this was made out by counting the farm which was conveyed to Austin and Whitford at $1000, as an absolute payment of that sum, notwithstanding it was incumbered by a mortgage for $625, to one La Farge, which Woodbury had agreed to pay off and discharge. It will be borne in mind that it is a part of the complainant's own case, unequivocally stated on the face of his bill, that the farm was received at the price of $1000, Woodbury paying off the incumbrance ; so that if Woodbury should fail to pay it off, the amount actually received by Austin and Whitford would amount to only $375, instead of $1000.

The important point, therefore, for the defendants to admit or deny, was the fact whether by the agreement of the parties, the farm was to be regarded as an absolute payment, to the amount of the $1000, whether the mortgage should be paid off by Woodbury or not; and in the latter event, that Austin and Whitford were to look to the personal liability of Woodbury. This important fact, so essential to the complainant's success, was positively denied in the answers, and we think they are fully sustained by the proofs. The receipt endorsed on the contract, is only prima facie evidence, and is open to explanation and contradiction. The explanation is furnished by certain instruments in writing, which bear the same date with the contract and the receipt ; and which, we are to presume, were executed at the same time. Those instruments are the deed of the Jefferson county farm, and the covenant of Woodbury to discharge the mortgage which La Farge held against it. The receipt endorsed on the contract, the deed executed by Woodbury, and the guaranty of Woodbury against the mortgage, appear by the papers themselves connected with the statement in the bill and the evidence in the case, to have been executed at the same time, independently of the presumption arising from their bearing the same date. It is a familiar principle that papers executed at the same time and relating to the

Thomas *v.* Austin.

same subject matter should be construed together. (3 *Wend.* 233. 15 *John.* 458. 1 *Hill*, 601. *Cowen & Hill's Notes*, 1421, 2.) Thus an absolute deed and a defeasance bearing the same date, are read together and are construed as a mortgage. Applying that rule to the case under consideration, and bearing in mind the allegations of the bill, we find this receipt endorsed on the contract, (which would prima facie prove the payment of so much cash,) to be false. No money was in fact paid, and instead of $1000 being received, a farm was conveyed, which was worth, subject to the mortgage upon it, but $375. The fair reading of the receipt, in connection with the cotemporaneous papers, would be this: "Rec'd as part payment upon this contract a farm at the valuation of $1000, but inasmuch as this farm is subject to a mortgage of $625, which Mr. Woodbury agrees to pay off, it is not to be ultimately taken as a payment of $1000 unless the mortgage shall be discharged, pursuant to his agreement." The receipt has thus been explained and contradicted ; and, as it now appears that the mortgage was not paid by Woodbury, but was foreclosed and the land sold, the payment of the moneys due on the contract, set out in the bill, has entirely failed.

Again ; we think that the bill must have been dismissed without the aid of the conclusive testimony furnished by the cotemporaneous papers. If the endorsement had been made of the $1000 for the farm, as an absolute payment of that sum, (Austin and Whitford relying on the ability and integrity of Woodbury to keep his covenant, and to pay off the mortgage,) and Woodbury had, in violation of his covenant, permitted the land to be sold on the mortgage, and then, on paying up the residue of the moneys due on the contract, should demand a deed, he would invoke the powers of a court of equity in vain. That court never awards the pound of flesh, even when the agreement to pay it is strictly proved. The exercise of this equitable jurisdiction is never a matter of right, but always of discretion, and when the compulsory performance of a contract would be hard, unconscionable and inequitable, it is always refused. If this bill had been filed by Woodbury him-

Thomas v. Austin.

self, the chancellor would have said to him, "you must do equity to the defendants before you ask it of them. You must first make good your own covenant, by the violation of which the farm, which was received by them at $1000, has been utterly lost, before you ask them to perform theirs. Make good the $1000 payment which has failed by your own default and for which you are still liable, before you ask a decree founded upon a hypothesis of its actual receipt. You stand in the attitude of a party who demands the deed of a farm, which he has paid for in a consideration which he has guaranteed, and which has become worthless by the failure of the guaranty."

The argument need not be further extended, to show that Woodbury's claim to relief would be utterly hopeless. The complainant took the contract subject to all the rights and liabilities of Woodbury upon it when he assigned it, and must abide the same decision which would have been made against Woodbury. He, moreover, took it with full notice of what Austin claimed, as to the $1000 payment, and made provision in his contract with Woodbury for the very event that has occurred. He must, therefore, share the fate of his assignor.

We come now to a consideration of the ground upon which the late learned vice chancellor of the 4th circuit disposed of this case. And it is sufficient to say, that he did it by creating a new issue which the parties had not framed in the pleadings, and by adopting an hypothesis of fact not only not found in the bill, but in direct conflict with that portion of it which we have extracted and given in the very language of the complainant, verified by his oath. The hypothesis of the vice chancellor is, that the Philadelphia farm was received not at $1000, but at $1620, and that the purchase price of the farm of which the bill seeks a conveyance, has been fully paid, notwithstanding Woodbury failed to pay off the outstanding mortgage. It must be confessed that there is some evidence to justify that conclusion ; but the vice chancellor must have overlooked the fact, that this evidence was not within any issue which the parties had framed. In such a case, it is well settled that such

Thomas *v.* Austin.

evidence, though it may have been received without objec-
tion, must be disregarded on the hearing, and that a decree
founded on evidence of that character, will be reversed.   This
principle, to this precise extent, was adjudged by the court
for the correction of errors in the case of *James* v. *McKer-
non*, (6 *John. Rep.* 543, 559, 565.)   *See also to the same
effect,* 1 *Barb. Ch. Pr.* 339; 10 *Wheat. Rep.* 189; 1 *John.
Ch. Rep.* 117.   The rule is explicit and absolute, that a
party must recover in chancery according to the case made
in his bill, or not at all; "*secundum allegata*," as well as
"*probata.*"

There is also another principle of pleading, quite analogous
to that now under consideration, which forbids the complain-
ant from availing himself of the testimony on which the vice
chancellor founded his decree ; that is this : that in a case in
which the pleader has alleged a fact which is not denied by
his adversary, such fact shall be taken as true, and cannot be
contradicted in that suit.   Of this description is the fact that
the Jefferson county farm was received at $1000, and that
Woodbury was bound to pay off the outstanding mortgage.

There is no force in the suggestion that this fact is alleged
in the charging and not in the stating part of the bill.   It is
stated in its appropriate place,. and furnishes one of the few
instances in which the statement of a fact is legitimately
reserved for the charging part of the bill.   But it is just as
much a part of the plaintiff's case, and if the statement be
untrue, the party is just as liable to an indictment for per-
jury, and the defendant is just as much bound to answer it, as
though it had been alleged in the stating part of the bill.   (*See*
4 *Paige's Rep.* 365; *Hoffman's Prac. in Master's Office, p.*
260.)(*a*)

If the Jefferson county farm had been, in truth, taken at the
price of $1620, the complainant should have amended his bill.
He has not done so, however, and the consequence is that the
whole of the evidence on that subject being not within the issue,

(*a*) *See also* 1 *Barb. Ch. Pr*, 131,

should have been excluded from the consideration of the court. We have not deemed it necessary to examine the other questions discussed on the argument. The decree must be reversed, and the complainant's bill dismissed with costs.

