[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 474 
The counsel for the respondent insists that he was entitled to a nonsuit upon the ground that a justice of the peace in Cattaraugus county had no jurisdiction of the cause. This position is founded upon section 14 of the Revised Statutes (2 Statutes at Large 365), as amended by chapter 201 of Laws of 1843. This section originally provided that actions against public officers, etc., for acts done by virtue of their office, should be laid in the county where the fact happened, and the amendment added thereto, a proviso as follows: "provided, however, that actions brought by the county or town officers of one county in their official capacity against the county or town officers of another county in their official capacity shall be laid in some county adjoining the county *Page 476 
of the defendants, except the county of the plaintiff." This was an action brought originally by the commissioners of highways of two towns in Cattaraugus county, in their official character, against the commissioner of highways of a town in Erie county in like character, and consequently comes within the letter of the proviso. It must be determined whether this proviso includes actions in courts of justices of the peace, and, if so, whether it has been repealed by the Code, and, if not, whether the objection was so presented by the defendant as to make it available to him.
A careful examination of the proviso and of the statutes conferring jurisdiction upon courts of justices of the peace, and regulating its exercise, has satisfied me that the proviso has no application to these courts. The action was for the recovery of money alleged to be due from the defendant upon contract. No question is or can be made as to the jurisdiction over the subject-matter. Jurisdiction over the person is given to these courts, when the action is brought in the town where either of the parties reside, or in any town adjoining the same, and, in case of non-residents of the county, in a town where any of the parties may be. (2 R.S., 225, 226.) It will be seen that the statute particularly prescribes the cases in which justices' courts shall have jurisdiction of the parties and the mode of acquiring such jurisdiction. Process for this purpose can only be served in the county where the justice resides. Neither the plaintiff nor the justice have any power to lay the place of trial in any other county. In case the proviso applies to these courts, the plaintiff would be wholly deprived of any remedy therein, and of all remedy in cases involving amounts insufficient to carry costs in the Supreme Court, unless he could find the defendant in a county adjoining that of his residence other than the county of the plaintiff, and procure the service of process upon him while there. The language of the proviso shows that it was not intended to apply to justices' courts. It provides, not that the action shall be brought, but that it shall be laid in an adjoining county to that of the defendant other than that *Page 477 
of the plaintiff. This evidently refers to cases where the plaintiff or the court have the power to fix the venue or place of trial in the county designated, and the effect of the proviso is to restrict this right of designation to some county adjoining that of the defendant, other than that of the plaintiff. This clearly has no application to justices' courts, in which there is no such right of designation, but jurisdiction of the persons depends entirely upon the residence or presence of the parties not in the county, but in particular towns. This construction is not entirely unsustained by judicial authority. At common law an action of trespass for an injury to real estate was local, and could only be tried in the county where the real estate was situated. In Graves v. McKeon (2 Denio, 639) it was held that this rule had no application to justices' courts. That the action might be brought before a justice of another county, and, in case of a plea of title or an appeal, the Court of Common Pleas of the county where the action was brought would have jurisdiction. The effect of the proviso we have seen was to localize the action to some county adjoining that of the defendant other than that of the plaintiff. This no more applies to justices' courts than the rule at common law in regard to trespass to real estate.
The commissioners of Yorkshire and Ashford could not recover jointly of the defendant the amount, if anything, due their respective towns. The claim of each town was several, and the other had no interest therein. It follows that the defendant was entitled to a nonsuit upon this ground, unless the motion of the plaintiff to amend, by striking out the name of the commissioner of the town of Ashford, was correctly granted. This depends upon the question whether section 173 of the Code applies to justices' courts. That it does so apply, was held by this court in Ackley
v. Tarbox (31 N.Y., 564). True, in that case, the name stricken out was that of a mere nominal party, while in the present case each plaintiff had an equal several interest in the demand; but in that, no more than in the present, could a judgment in favor *Page 478 
of both plaintiffs be legally given. The question as to the power of granting the amendment was the same in both, although the discretion to be exercised was quite different. In the former there could be no question as to the propriety of the amendment if the court had the power of granting it. In the present, that was a more doubtful question; but this court can only determine as to the power, and the court having that, and having granted the amendment, leaving the case to proceed in behalf of the commissioner of Yorkshire as sole plaintiff, this ground for the motion was obviated.
The remaining question is, whether the plaintiff proved any cause of action against the defendant. This depends upon the construction of section 1, chapter 225, Laws of 1841, page 207, as amended by section 1, chapter 283, volume 1, Laws of 1857, page 788. The former enacts that, whenever any adjoining town shall be liable to make and maintain any bridges over any stream dividing such towns, such bridges shall be built and repaired at the equal expense of said towns, without reference to the town lines. By the latter, this section is amended, so as to read as follows: "Whenever any two or more towns shall be liable to make or maintain any bridge or bridges, the same shall be built and maintained at the joint expense of said towns, without reference to town lines." Under the act of 1841, the towns must contribute equally to the erection and maintenance of the bridge, irrespective of the proportion located in either; and this, although it may cost much more to construct the part in one town than that in the other; the language of the act precludes all doubt upon this matter. The question is, whether the amendment has made any change in this respect. In the original act, the language is, shall be built, etc., at the equal expense of the towns, without reference to town lines. In the amendment, the words "at the joint expense of the towns" are substituted for the words "equal expense;" and the words "without reference to town lines" are retained. This shows clearly that in the amended statute, as in the original, the proportion of the expense chargeable to each town was fixed without *Page 479 
regard to the portion of the bridge located in either. The expense is to be borne by the towns jointly, wholly irrespective of that fact. Had it been the intention to fix the amount by such fact, the language used would have been, "reference being had to the town lines to determine the part of the bridge located in each, and each shall contribute to the expense in proportion thereto." The words, "at the joint expense of the towns," in the absence of anything showing a different intention, import that it is to be equally borne by the towns chargeable. The counsel for the appellant refers to the law requiring each town to build and maintain its own bridges, and from this argues that it must have been the intention to require each to build the part within its limits; and where there is no proof showing that one part was more extensive than another, they must pay in proportion to the part located in each. This entirely overlooks the object of the statute. That was that, when two or more towns were required to build and maintain a bridge, such bridge should be built and maintained at their joint expense, without reference to the town lines. That is without reference to the part located in either. The bridge being upon the lines of each of the towns, is, presumptively, equally necessary and useful for all; hence, it was thought just by the legislature that each should contribute equally to its maintenance. This will often operate more justly than dividing the expense in proportion to the area of the bridge in the respective towns, as it will often happen from the character of the stream, banks, etc., that one portion will be much more expensive than another. But it is sufficient that the statute so provides and that the legislature had the power to enact it. Its justice and expediency was for that body to determine. It may be said that this view makes the amendment superfluous, as no change in the law was thereby effected; not at all. The original act only embraced cases where the streams separated the towns; in other words, where they abutted thereon and the stream run along the line. By the amendment, towns lying upon both sides of the stream, where a bridge was necessary upon *Page 480 
the lines thereof, were embraced; in short, it was made to include all towns in which any part of the bridge was located, and all were required to contribute jointly to the expense, without reference to town lines; that is, without regard to the particular part located in any town. This was the conclusion arrived at by Mr. Justice BUTTON, after thorough deliberation, for the entire time allowed by law for that purpose, doubtless, aided by consultation with the clear-headed common-sense men of the neighborhood. It is somewhat to be regretted that the parties did not acquiesce in this conclusion instead of litigating the case twice at the trial term and twice at the General Term of the Supreme Court.
Upon the questions whether the complaint could be amended by striking out one of the plaintiffs and whether a suit could be brought in a Justice's Court in Cattaraugus county — upon the last of which it was finally disposed of by the General Term, without considering the only question upon the merits between the parties, and the one which was at once grappled with and correctly decided by the justice, as it conclusively appears from the complaint, and otherwise, that the towns have already paid equally for building the bridge — it follows that in no event can the plaintiff recover from the defendant, and that a new trial would be useless.
The judgment must be affirmed, with costs.
All concur.
Judgment affirmed.